## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MARGARET DEWEESE-BOYD,

        Plaintiff,

v.

GORDON COLLEGE, D. MICHAEL
LINDSAY, JANEL CURRY, HERMAN
SMITH, and MYRON ULLMAN III,

        Defendant.

Civil Action No. 1:22-cv-10323-IT

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EMERGENCY
MOTION TO EXCLUDE EXHIBITS TO DEFENDANTS' MOTION
TO DISMISS, TO DENY MOTION, AND TO STAY BRIEFING
PURSUANT TO THE COURT'S ORDER [DOC. 25]**

Respectfully submitted,

GORDON COLLEGE, D. MICHAEL LINDSAY,
JANEL CURRY, HERMAN SMITH, and MYRON
ULLMAN III

By their attorneys,

*s/Ashley B. Abel*
Ashley B. Abel (admitted pro hac vice)
Ashley.Abel@jacksonlewis.com
Jackson Lewis P.C.
15 South Main Street
Suite 700
Greenville, SC 29601
(864) 672-8036

Benjamin R. Davis (BBO #673017)
benjamin.davis@jacksonlewis.com
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA  02116
(617) 367-0025

## **TABLE OF CONTENTS**

A.    INTRODUCTION ..................................................................................................... 5

B.    ARGUMENT ........................................................................................................... 7

　1.    Plaintiff's Attempt to Deny Due Process to Defendants in Prohibiting Their Motion to Dismiss from Being Briefed and Decided on Its Merits is Legally and Factually Baseless ....... 7

　2.    Defendants' Exhibits Consist of Three Documents Referenced and Relied On in Plaintiff's First Amended Complaint and a Legal Article Quoting Plaintiff and Her Counsel Which is Relevant and Publicly Available Precedent Requires That They be Considered For Purposes of Defendants' Motion to Dismiss ............................................................................ 8

　3.    Plaintiff Cannot Create An Issue of Fact to Avoid Dismissal by Disagreeing With Her Own Complaint ................................................................................................................. 10

　4.    The Federal Court Has Independent Jurisdiction to Evaluate Federal Issues Involving the U.S. Constitution ................................................................................................................ 13

　5.    This Court Has Jurisdiction To Evaluate the Ministerial Exception and Exception Circumstances Which Are Compelling to Issue a Ruling Granting the Defendants' Motion to Dismiss on that Ground .................................................................................................. 17

　6.    The Dispositive Basis Presented in Defendants' Motion to Dismiss for Application of All First Amendment Protections Has Never Been Presented in this Case And is Ignored in Plaintiff's Motion ............................................................................................................ 18

　7.    Counts I Through VI (Mass. ) Plaintiff's Employment Claims Under Massachusetts Statutes (Counts I Through VI) Are Barred By Exemption Under G.L. 151B ......................... 21

　8.    Plaintiff's Title VII Claims (Counts VII and VIII) Are Barred by Exceptions Under 42 U.S.C. §2000e-1 and 2000e-2 ...................................................................................... 22

　9.    Plaintiff's MCRA Claim and Contract Claim (Counts IX through XI) Are Barred As a Matter of Law Based on the Exclusivity Provision of G.L. §151B, §9 ................................... 22

　10.    Plaintiffs' Statutory Employment Claims Under Massachusetts Law, G.L. 151B, and Under Federal Title VII Are Barred Based on the Bona Fide Occupational Qualification Exemptions of Those Statutes ................................................................................................ 22

## **TABLE OF AUTHORITIES**

**Cases**

*Boy Scouts of America v. Dale*, 530 U.S. 640, 660 (2000).................................... passim

*Cav Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984).............. 11

*Clorox Co. P.R. v. Proctor & Gamble Comm. Co.*, 228 F. 3d 24, 32 (1st Cir. 2000) ................. 10

*Colon v. Blades, 268 F.R.D.* 143, 146 (D.P.R. 2010).......................................................... 9

*Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327, 335-336 (1987)........................................................................... 19

*Crowley v. L.L. Bean, Inc.,* 303 F.3d 387 (1st Cir. 2002)................................................. 9

*Doyle v. Hasbro*, 103 F.3d 186, 190 (1st Cir. 1996)......................................................... 11

*EdgePoint Capital Holdings, LLC v Apothecare Pharmacy, LLC,* 6 F.4th 50, 61 n.8 (1st Cir. 2021).......................................................................................................... 13

*Elkins v. United States,* 364 U.S. 206, 224 (1960)........................................................... 13

*FDIC v. First Mortgage Investors*, 485 F. Supp. 445, 450 (E.D. Wisc. 1980).............. 14

*Forrester Wine v. Nat. Col. Student Loan Tr.*, 2017 U.S. Dist. LEXIS 131174, at *15-16 (D. Me. Aug. 17, 2017)............................................................................................... 11

*Fulton v. City of Philadelphia*, ___ U.S. ___, 141 S. Ct. 1868 (2021)........................... 21

*Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019)........................................... 10

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174 (D.D.C. 2002) .. 12

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012) .... 16, 19

*In re Asbestos Litigation*, 829 F.2d 1233, 1237 (3d Cir.1987) ....................................... 14

*Judson v. Midland Credit Mgmt.*, C.A No. 13-11435-TSH, 2014 U.S. Dist. LEXIS 139601, *7-8 (D. Mass. Oct. 1, 2014 ............................................................................ 9

*Kuehl v. F.D.I.C.,* 8 F.3d 905, 907, n.4 (1st Cir. 1993) .................................................... 9

*Leboon v. Lancaster Jewish Cmty. Center Ass'n*, 503 F.3d 217 (3d Cir. 2007) ............ 12

*Little v. Wuerl*, 929 F.2d 944, 945-46 (3d Cir. 1991) ...................................................... 19

*Local 1 of United Food & Commercial Workers v. Heinrich Motors, Inc.*, 559 F. Supp. 192, 195 (W.D.N.Y. 1983)..................................................................................... 14

*Marcello v. Maine,* 489 F. Supp. 2d 82, 85-86 (D. Me. 2007) ....................................... 9

*Metropolitan Property & Casualty Insurance Co. v. Savin Hill Fam. Chiropractic, Inc.*, 322 F.R.D. 151 (D. Mass. 2017).................................................................................. 10

*Negron-Almeda v. Santiago*, 579 F.3d 45, 51-52 (1st Cir. 2009) ................................... 14

*Otero v. Nat'l Distrib. Co*., 2008 U.S. Dist. LEXIS 109209, *9, 2008 WL 6400362 (D.N.M. July 1, 2008).................................................................................................. 14

*Phinney v. Paulshock*, 181 F.R.D. 185, 207 (D.N.H. 1998)............................................. 9

*Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir. 1999) .................................. 9

*Pilgrim v. Trs. of Tufts Coll.,* 118 F.3d 864, 868 (1st Cir. 1997) .................................... 9

*Quinn v. Aetna Life & Cas. Co.*, 616 F.2d 38, 40-41 (2d Cir. 1980)............................... 13

*Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).......................................... 20

*Robinson v. Gorman*, 145 F. Supp. 2d 201, 204 (D. Conn. March 30, 2001) ............... 13

*Saeemodarae v. Mercy Health Servs.*, 456 F. Supp. 2d 1021 (N.D. Iowa 2006) .......... 12

*Seattle's Union Gospel Mission v. Woods*, __ U.S. __, 2022 LEXIS 1447 (2022)................. 15

*Trans-Spec Truck Service v. Caterpillar*, 524 F. 3d 315,321,(1st Cir. 2008).............. 10

*Tsirpanlis v. Unification Theological Seminary*, 99 Civ. 0013 (LMM), 2001 U.S. Dist. LEXIS 512, 2001 WL 64739 (S.D.N.Y. Jan. 24, 2001) ......................................... 12

*Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F. Supp. 393, 406-07 (D. Minn. 1996) .......... 14

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ....................................................................... 10

*Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009) ..................................... 11

*Wirth v. College of the Ozarks*, 208 F.3d 219 (8th Cir. 2000) .................................................... 12

**Statutes**

151B § 1(5) ......................................................................................................................... 13, 22

**2000e-2** ............................................................................................................................... 22

28 U.S.C. §723 ............................................................................................................................. 7

**42 U.S.C. §2000e-1** ........................................................................................................... 22

42 U.S.C.A. § 2000e-2(e)(2) ................................................................................................. 12

**G.L. §151B, §9** ................................................................................................................... 22

**Other Authorities**

Peter Linzer, The Meaning of Certiorari Denials, 79 Columbia Law Rev. 1227, 1302-1305 (1979) .............................................................................................................................. 17

**Rules**

*Fed. R. Civ. P. 12(f)* ............................................................................................................... 9

*Fed. R. Civ. P. 7(a)* ................................................................................................................. 9

Rule 1 .......................................................................................................................................... 7

Rule 12(b)(6) .................................................................................................................. 6, 7, 10, 11

*Rule 7* ......................................................................................................................................... 9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARGARET DEWEESE-BOYD,<br><br>          Plaintiff,<br><br>v.<br><br>GORDON COLLEGE, D. MICHAEL LINDSAY, JANEL CURRY, HERMAN SMITH, and MYRON ULLMAN III,<br><br>          Defendant. | Civil Action No. 1:22-cv-10323-IT |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EMERGENCY
MOTION TO EXCLUDE EXHIBITS TO DEFENDANTS' MOTION
TO DISMISS, TO DENY MOTION, AND TO STAY BRIEFING
PURSUANT TO THE COURT'S ORDER [DOC. 25]**

**A.     INTRODUCTION**

At issue now in Plaintiff's motion [Doc 19] is her request for the Court to "exclude exhibits" and "to deny [Defendants'] motion [to Dismiss]."  In support of her motion, Plaintiff states:

> In order to promote efficiency and judicial economy, district courts make rulings regarding **the appropriate timing of motions** and may strike exhibits that are not appropriately considered.

Doc. 19 at 6.  However, no legal authority is cited anywhere in Plaintiff's motion about any "appropriate timing of motions" (or how that could equate to dismissal of a motion to dismiss), authority for a plaintiff to file a motion to dismiss a defendants' motion to dismiss, or for a court to entertain such a motion in the first instance.  Other than arguing about the exhibits, the ministerial exception issue defense, and what to make of the Statement issued by four justices of the U.S. Supreme Court about this very case, Plaintiff's motion is clearly intending, but fully

lacking, any precedent or authority, to short-circuit Defendants' right to assert a Rule 12(b)(6) motion because: "[i]t is simply not fair to Professor DeWeese-Boyd for there to be further delays, likely of several months or more, during substantive briefing and argument on a motion to dismiss that is procedurally deficient." She therefore asks the Court to "deny[] Defendants' motion on procedural grounds." Doc. 19 at17. Again, no legal authority is provided, nor is there any, as discussed below, whether "procedural" or otherwise. Moreover, Defendants' motion to dismiss should proceed forward because of the numerous dispositive grounds asserted by Defendants, all but one of which have never been litigated previously herein.

As discussed below, Defendants are entitled to have their motion to dismiss reviewed, heard, and decided on its merits. Applicable law requires that Defendants' exhibits, relied on in depth in Plaintiff's First Amended Complaint ("FAC") and also subject to judicial notice, be permitted and considered by the Court in evaluating Defendants' motion to dismiss. Also, Plaintiff is prohibited from using her motion to dismiss and strike [Doc. 19] to create an issue of fact by disagreeing with the allegations of her complaint.

This Court has the jurisdiction and power to evaluate the prior ruling in this action by a state supreme court, particularly given that the issue involved is a matter of federal law in applying the First Amendment to the United States Constitution. Further, it should exercise that authority and consider the Statements issued in this very case by justices of the United States Supreme Court and in related actions, as noted below. Defendants are entitled to a dismissal of this action both with and without the exhibits attached to Defendants' motion.

Plaintiff's motion has no basis to preclude consideration of the six other fully dispositive arguments presented by Defendants in their motion to dismiss. [Doc. 17 at 20-35] None of these arguments has been adjudicated in this case, and none is addressed in Plaintiff's motion [Doc. 19].

Discovery is plainly not needed in order to decide Defendants' motion to dismiss on legal issues and the sufficiency of Plaintiff's own factual allegations. It is important to note that the factual allegations at issue in the FAC have been Plaintiff's words and allegations since 2017 and have been and are stated in great detail. She is bound by them, and Defendants are entitled to test them for sufficiency to state a claim by way of a motion to dismiss. Defendants present at the end of this memorandum a brief overview of the six dispositive arguments never addressed in this lawsuit and refer the Court over to its memorandum in support of their motion to dismiss [Doc. 17] for the detailed discussion and supportive precedent underlying those arguments.

**B.**     **ARGUMENT**

    **1.**   **Plaintiff's Attempt to Deny Due Process to Defendants in Prohibiting Their Motion to Dismiss from Being Briefed and Decided on Its Merits is Legally and Factually Baseless.**

Defendants have a right to file a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P. While the Court can and should control its docket, it is without precedent to suggest that a 35-page motion to dismiss asserting 7 grounds for dismissal, with 78 citations to authority is not a bona fide motion which should be adjudicated on its merits. There is no rule of procedure authorizing a motion to dismiss a motion to dismiss, and no case recognizing it, as the absence of any authority in Plaintiff's motion plainly admits. The Defendants' right to submit a motion to dismiss is in the nature of a due process right since it is afforded as a rule of federal judicial procedure authorized by an act of Congress. *See* Rule 1, Fed.R.Civ.P., Adv. Comm. Note 1937, ¶ (citing authorization pursuant to 28 U.S.C. §723). While Defendants respond below to the issues raised and implicated by the remainder of Plaintiff's motion, the strikingly minimal and unsupported portion seeking to "deny" Defendants' motion without responding to it should be denied, and Plaintiff should be ordered to respond, if she chooses, to the remainder of Defendants' arguments for dismissal and the 17 pages of her "motion" counted against her 20-page limit. Now is the time before more time,

effort, and money are spent to defend Defendants' First Amendment protections and rights. When religious institutions are forced by litigation and possible court orders to forfeit their First Amendment rights and protections or engage in expensive and protracted litigation (4 years and counting in this case to date), the First Amendment is in jeopardy. Those who either cannot afford it or cannot survive the legal and public relations ordeal of it are "forced to forfeit religious freedom that the Constitution protects." *Fulton v. City of Philadelphia*, ___ U.S. ___, 141 S. Ct. 1868, 1930 (2021) (Gorsuch, J. concurring in the judgment). A dismissal in full of this action is warranted on the law and the facts alleged and will permit this action to proceed to the First Circuit and the U.S. Supreme Court for review. In reality, this is the most expeditious way to avoid more years of unnecessary protracted discovery, summary judgment proceedings, and possibly a trial only for the U.S. Supreme Court to prove it all in vain and actually a disservice to all concerned, both in this lawsuit and for those other 12,500 religious schools and their students, and faculty across the country, all of whom need clarity on these issues.

2. **Defendants' Exhibits Consist of Three Documents Referenced and Relied On in Plaintiff's First Amended Complaint and a Legal Article Quoting Plaintiff and Her Counsel Which is Relevant and Publicly Available Precedent Requires That They be Considered For Purposes of Defendants' Motion to Dismiss.**

Defendants' exhibits should be considered fully in deciding the merits of Defendants' motion to dismiss. However, even absent the Administrative/Faculty Handbook [Doc. 16, Exs. B and C], the FAC provides more than enough information to know that: Gordon College is a religious institution; it holds evangelical religious Christian beliefs; those beliefs include a belief against homosexual practice and marriage; Plaintiff no longer holds those same views; Plaintiff publicly disagreed with those religious beliefs and advocated publicly that they should be changed; and Plaintiff claims adverse employment action was taken against her as a result. The Handbook explains those beliefs in more detail and should be considered since Plaintiff references the

College's policies relating to homosexuality 28 times (FAC, ¶¶ 1, 2, 6, 22, 23a, 23b, 23c, 24, 26a, 26b, 26c, 26d, 31, 35, 37, 39, 43, 46, 48, 50-51, 53, 58, 72, 128, 129, 139, 151).  She references the Handbook expressly 24 times (FAC ¶¶ 8, 33, 42, 47, 62, 80-81, 107, 112-127).  She relies on the By-Laws twice.  (FAC, ¶¶ 103-104).  Plaintiff's argument is completely meritless and disingenuous that the Handbook has "nothing to do with Plaintiff's claims." [Doc. 19 at 13] Further, the Handbook contains the "College's Life and Conduct Statement" which is also referenced in the FAC and appears on its website among other places.  [FAC, ¶ 26(b)]

Plaintiff's motion appears to be an effort to elude the case law pertaining to such motions. "The First Circuit has repeatedly held that memoranda and motions are not considered pleadings within the meaning of the Rules of Federal Civil Procedure (see *Fed. R. Civ. P. 7(a)* for a definition of a "pleading"); therefore it has refused to strike motions under *Fed. R. Civ. P. 12(f)." Judson v. Midland Credit Mgmt.*, C.A No. 13-11435-TSH, 2014 U.S. Dist. LEXIS 139601, *7-8 (D. Mass. Oct. 1, 2014) (citing *Pilgrim v. Trs. of Tufts Coll.,* 118 F.3d 864, 868 (1st Cir. 1997), abrogated on other grounds by *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387 (1st Cir. 2002)) (*Rule 12(f)* applies only to pleadings and not to motions made in pursuit or in opposition to summary judgment); *Kuehl v. F.D.I.C.,* 8 F.3d 905, 907, n.4 (1st Cir. 1993) ("[i]t is well established in this circuit that motions to dismiss are not responsive pleadings"); *Phinney v. Paulshock,* 181 F.R.D. 185, 207 (D.N.H. 1998) aff'd sub nom. *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir. 1999) (*Rule 12(f)* only applies to pleadings); *Marcello v. Maine,* 489 F. Supp. 2d 82, 85-86 (D. Me. 2007) (a summary judgment motion is not a pleading as defined by *Rule 7); Colon v. Blades, 268 F.R.D.* 143, 146 (D.P.R. 2010) ("[a]n informative motion is not a pleading within the meaning of *Rule 12(f)"*).  Plaintiff ignores this authority and instead gestures broadly at the court's supposed "inherent power" to deny a motion to dismiss without considering it.

Notably, Plaintiff does not cite a single case in which a court has taken such a drastic action. Plaintiff cites *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019) for the proposition that "courts often strike exhibits attached to motions to dismiss." But no exhibits were stricken by the court in that case. Stranger still, Plaintiff cites *Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) for the same proposition when in that case the court not only did not strike exhibits, but also explained that the trial court had <u>properly</u> relied on a number of documents outside of the complaint because "the authenticity of which are not disputed by the parties" or were "central to plaintiffs' claim" or were "sufficiently referred to in the complaint." *Id.* at 3. In short, Plaintiff has identified no support for the extraordinary request she has made to strike Defendants' motion to dismiss in lieu of deciding the motion in the ordinary course after the parties' have briefed the issue.

Moreover, First Circuit precedent clearly allows a district court to consider documents referenced in the complaint and/or of which it can take judicial notice, in deciding a Rule 12(b)(6) motion to dismiss. *Trans-Spec Truck Service v. Caterpillar*, 524 F. 3d 315,321, (1st Cir. 2008); *Clorox Co. P.R. v. Proctor & Gamble Comm. Co.*, 228 F. 3d 24, 32 (1st Cir. 2000). Plaintiff's contention that their consideration is "forbidden" [Doc. 19 at 11] is baseless.

Whether intentionally or not, Plaintiff's motion to strike stands as an unfair mini-opposition to Defendants' motion to strike. The Plaintiff's various arguments are all bases for opposing Defendants' motion to dismiss and are not valid supports for dismissal of a motion to dismiss.[1]

### 3. <u>Plaintiff Cannot Create An Issue of Fact to Avoid Dismissal by Disagreeing With Her Own Complaint.</u>

---

[1] Strikingly, Plaintiff cites *Metropolitan Property & Casualty Insurance Co. v. Savin Hill Fam. Chiropractic, Inc*., 322 F.R.D. 151 (D. Mass. 2017) in support of her argument that the College's by-laws and Administrative/Faulty Handbook should be stricken. In that case, the court <u>denied</u> motions to strike hearing transcripts, as subject to judicial notice, and five letters, because they were referenced in and relied upon in the complaint. Thus, *Metropolitan Property & Casualty Insurance Co.* actually supports Defendants' position.

The FAC states that Gordon College has religious policies and practices against homosexual practice and marriage. (FAC ¶ 23, et. al.)  She alleges that she began publicly disagreeing with those policies and advocating that they be changed, to her view (FAC ¶¶ 23-26) She claims she was denied full professorship and later terminated based on those actions.(FAC ¶¶ 31, 39, 138-139)  As noted above, Plaintiff references and relies on the Handbook and By-Laws Those documents also evidence the College's religious beliefs and employment requirements.

To avoid a proper dismissal, Plaintiff has desperately resorted to disagreeing with her FAC to drum up a purported reason for discovery.  Her motion [Doc. 19 at 14-16], contrary to her FAC, questions whether Gordon College indeed has sincerely held religious beliefs about homosexuality and marriage and then suggest discovery is needed to probe them.  This is directly contrary to her FAC which states repeatedly that Gordon has a "prohibition against homosexual practice" (FAC, ¶¶ 1-6, 22-26, 31-39, 51, 137-173, et al.)

First, Plaintiff is bound by her FAC.  Her lawyer cannot put words in her mouth in a "motion" and contravene the repeated, numerous factual allegations in the FAC to avoid a proper dismissal.  Indeed, a plaintiff cannot supplement the allegations of the complaint through a brief in response to a motion, and certainly cannot contradict the allegations in the complaint.  *Doyle v. Hasbro*, 103 F.3d 186, 190 (1st Cir. 1996), *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009).  Factual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint under Rule 12(b)(6). Id.; *Cav Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984); *Forrester Wine v. Nat. Col. Student Loan Tr.*, 2017 U.S. Dist. LEXIS 131174, at *15-16 (D. Me. Aug. 17, 2017).  In determining a motion to dismiss, a court may only consider the complaint itself and documents referred to in the complaint. *Wilchombe*, 555 F.3d at 959.

Second, as matter of law, Plaintiff is not permitted to question a religious institution's sincerely held religious belief. The FAC admits to Gordon's religious beliefs and acknowledges they are in writing and are before the Court. She has not disputed their authenticity. They are also available publicly for judicial notice to be taken. Accordingly, Plaintiff is bound to her FAC and the written religious beliefs. Neither she nor a court can question or litigate them. *See Boy Scouts of America v. Dale,* 530 U.S. 640, 651, 653, 661 (2000).

With respect to Plaintiff's argument that discovery is required before the Court can decide Defendants' remaining arguments, that is simply untrue. For instance, numerous courts have dismissed claims on the grounds that Section 702 grants religious organizations immunity from Title VII religious discrimination claims. *See, e.g., Leboon v. Lancaster Jewish Cmty. Center Ass'n*, 503 F.3d 217 (3d Cir. 2007) (dismissing religious discrimination claim against Jewish community center); *Wirth v. College of the Ozarks*, 208 F.3d 219 (8th Cir. 2000) (affirming dismissal of employee's discharge and retaliation claims against a Christian, nondenominational college under Title VII's Section 703(e)(2) exemption, 42 U.S.C.A. § 2000e-2(e)(2)); *Saeemodarae v. Mercy Health Servs*., 456 F. Supp. 2d 1021 (N.D. Iowa 2006) (dismissing religious discrimination claim against Catholic hospital); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174 (D.D.C. 2002) (dismissing religious discrimination claim against church and its affiliates); *Tsirpanlis v. Unification Theological Seminary*, 99 Civ. 0013 (LMM), 2001 U.S. Dist. LEXIS 512, 2001 WL 64739 (S.D.N.Y. Jan. 24, 2001) (dismissing religious discrimination claim against seminary).

Moreover, in order to determine whether religion was a bona fide occupational qualification for a professor at Gordon College, the Court need only resort to Gordon College's Life and Conduct Statement, which all professors must abide by. Similarly, in determining whether

Gordon College is a "religious or denominational institution organization or any organization operated for … educational purposes, which is operated, supervised, or controlled by or in connection with a religious organization, and which limits membership, enrollment, admission, or participation to members of that religion" under Chapter 151B § 1(5), its Statement of Life and Conduct answers that question definitely. Finally, there is no question that Defendants' argument concerning the application of Chapter 151B's exclusivity provision to Plaintiff's "recast" common law claims is question purely of Plaintiff's pleadings.  Thus, there is no basis for sidestepping these categorical questions of religious freedom.

### 4.  The Federal Court Has Independent Jurisdiction to Evaluate Federal Issues Involving the U.S. Constitution.

With respect to Plaintiff's contention that the law of the case doctrine bars this Court from considering Defendants' constitutional arguments, she is plainly incorrect. The Supreme Judicial Court's ("SJC") interpretation of federal law is not binding on the federal courts. *EdgePoint Capital Holdings, LLC v Apothecare Pharmacy, LLC*, 6 F.4th 50, 61 n.8 (1st Cir. 2021) (distinguishing SJC's interpretation of federal securities law and alternatively explaining that the state court's decision is not binding on a federal court) (citing *Elkins v. United States,* 364 U.S. 206, 224 (1960) (holding that scope of the Fourth Amendment to the U.S. Constitution is a question of federal law that state courts can neither enlarge nor diminish).

A state-court decision as to matters of federal law is not entitled to be treated as the law of the case. *See Quinn v. Aetna Life & Cas. Co*., 616 F.2d 38, 40-41 (2d Cir. 1980). "The 'law of the case' doctrine generally prevents re-litigation of an issue previously decided in the same case, however, the doctrine need not be followed when a claim based on a federal question is removed to federal court." *Robinson v. Gorman*, 145 F. Supp. 2d 201, 204 (D. Conn. March 30, 2001) (citing *Local 1 of United Food & Commercial Workers v. Heinrich Motors, Inc*., 559 F. Supp. 192,

195 (W.D.N.Y. 1983); *FDIC v. First Mortgage Investors*, 485 F. Supp. 445, 450 (E.D. Wisc. 1980)). "Thus, federal courts retain the discretion to revisit prior rulings by a state court after they are removed from that forum, particularly when such prior rulings involve a question of federal law." *Otero v. Nat'l Distrib. Co*., 2008 U.S. Dist. LEXIS 109209, *9, 2008 WL 6400362 (D.N.M. July 1, 2008) (citing *Waag v. Thomas Pontiac, Buick, GMC, Inc.*, 930 F. Supp. 393, 406-07 (D. Minn. 1996)); *See generally In re Asbestos Litigation*, 829 F.2d 1233, 1237 (3d Cir.1987) ("There is, however, a fundamental difference between the two judicial systems that affects the application of the appropriate law. The state trial court is bound by its judicial hierarchical organization to follow the state supreme court's rulings on constitutionality despite possible doubt about the correctness of the decisions. In the absence of binding federal precedent, the state trial court should defer to the highest court of the state. The federal district court, however, takes as its authority on federal constitutional issues decisions of the United States Courts of Appeals and the United States Supreme Court, rather than those of the state supreme court.")

Moreover,  even if the SJC's ruling did not address a question of federal constitutional law, courts may reopen a matter previously decided on a showing of exceptional circumstances, including  "convince[ing] the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice." *Negron-Almeda v. Santiago*, 579 F.3d 45, 51-52 (1st Cir. 2009). Plaintiff contends the controlling authority has not changed and so "exceptional circumstances" do not exist.

The exceptional circumstance is the 5-page "Statement" issued by four justices of the U.S. Supreme Court in <u>this</u> very case, in denying certiorari, articulating clear error by the SJC.

The suggestion by Plaintiff that the Statement is not "persuasive in any way" belies reality. [Doc. 19 at 8]  The Statement reflects that the reason certiorari was denied was because the ruling

of the SJC was interlocutory in nature.   On its merits, however, Justices Alito, Thomas, Kavanaugh, and Barrett let their 4 votes be known.

> Although the state court's understanding of religious education is troubling, I concur in the denial of the petition for a writ of certiorari because the preliminary posture of the litigation would complicate our review.  But in an appropriate future case, this Court may be required to resolve this important question of religious liberty.

> \* \* \*

> In *Our Lady of Guadalupe School*, we explained that the "ministerial exception" protects the "autonomy" of "churches and other religious institutions" in the selection of the employees who "play certain key roles."  591 U.S., at __(slip op., at 11).  We recognized that "educating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school."

> \* \* \*

> The Massachusetts Supreme Judicial Court thought that DeWeese-Boyd was not a religious educator because she did not "teach religion, the Bible, or religious doctrine." 487 Mass., at 49, 163 N.E. 3d, at 1014. Though it acknowledged her responsibility "to integrate the Christian faith into her teaching, scholarship, and advising," the state court asserted that this responsibility was "different in kind" from the kind of religious education at issue in *Our Lady of Guadalupe School* and insufficient to make DeWeese-Boyd a minister. 487 Mass., at 53, 163 N.E., at 1017.

> \* \* \*

> That conclusion reflects a troubling and narrow view of religious education.

> I have doubts about the state court's understanding of religious education and, accordingly, its application of the ministerial exception.

*Gordon College v. DeWeese-Boyd*, 595 U.S. __ (2022).  Once the merits are in the plain view of the U.S. Supreme Court, it is a solid bet that at least Justice Gorsuch will support Defendants' argument to dismiss the case based on the ministerial exception.  This conclusion is based on the "Statement" he authored in *Seattle's Union Gospel Mission v. Woods*, __ U.S. __, 2022 LEXIS 1447 (2022). In *Woods*, Justices Gorsuch and Thomas explained in four detailed pages of analysis why the Washington Supreme Court committed legal error under the First Amendment in holding

a staff attorney of Seattle's Union Gospel Mission did not satisfy a state employment law exemption for religious entities because he was not a "minister."  There, as here, plaintiff Woods alleged a violation of the state's law against discrimination by taking employment action because he disagreed with and would not "abide by" its stated religious beliefs against homosexual practice.  *Id*. at *3.  The Statement elaborates:

> If States could compel religious organizations to hire employees who fundamentally disagree with them, many religious non-profits would be extinguished from participation in public life-perhaps by those who disagree with their theological views most vigorously.  Driving such organizations from the public square would not just infringe on their rights to freely exercise religion but would greatly impoverish our Nation's civic and religious life.
>
> This case illustrates that serious risk.  Woods applied for a position with the Mission not to embrace and further its religious views but to protest and fundamentally change them.

*Id*. at *7.

Significantly, in Our Lady of Guadalupe, Justice Gorsuch joined Justice Thomas's concurring opinion that "reiterate[d his] view that the Religion Clauses require civil courts to defer to religious organizations' good faith-claims that a certain employee's position is ministerial." 140 S. Ct. at 2069-70 (Thomas, J., concurring).  Thus, there is a strong probability that there are five Justices who would reverse the SJC's decision.

Defendants have never suggested either or both of these Statements are binding precedent as Plaintiff mistakenly claims.  What Defendants have placed before the Court is a request for the Court to exercise thoughtful discretion in light of the state court's treatment of a federal Constitutional question and the "dicta" (according to Plaintiff – Doc. 19 at 9) from 5 justices of the Supreme Court maintaining that state supreme courts are missing the mark in applying *Our Lady* and *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012) under the First Amendment to the U.S. Constitution.  As commentators evaluating such statements

agree in connection with denials of certiorari:

> From all of the material we have considered, I conclude that the certiorari process has, in a sizable number of cases, become the first battleground on the merits.
>
> * * *
>
> Yet it seems time to stop pretending that denial of certiorari means nothing. Many times it gives us a glimpse, imperfect to be sure, into the Justices' preliminary attitudes on a given issue.
>
> * * *
>
> The dissents [from denial of certiorari] and other separate opinions also can provide starting points for reexamination of an issue….
>
> * * *
>
> The denial is a sort of litmus paper giving the observer a first reading of the Court.

Peter Linzer, The Meaning of Certiorari Denials, 79 Columbia Law Rev. 1227, 1302-1305 (1979).

Moreover, such Statements are rare and thus were intended to have significance. Indeed, from April 2020 to present, there were only 16 Statements issued out of over 7,000 denials of certiorari (including the one at issue herein) or 0.2%. In the year prior to then, there were 21 Statements and only 12 the year before. The number of Statements joined by four Justices is rarer still. In the 37 Statements from the last two years. *Gordon College* is the <u>only</u> statement joined by four of the Justices. This is an exceptional circumstance by any definition.

### 5. <u>This Court Has Jurisdiction To Evaluate the Ministerial Exception and Exception Circumstances Which Are Compelling to Issue a Ruling Granting the Defendants' Motion to Dismiss on that Ground.</u>

Tellingly, and very pertinent to the issues before the Court, Plaintiff continues to admit in her motion that her intent in this lawsuit is to redefine Gordon College's Christian religious views:

> Defendants would have this Court believe that, for example, opposition to same-sex marriage is a fundamental tenet of evangelical Christianity. This is false and prays on inaccurate stereotype about evangelical Christianity. In fact, there is a large (and growing) contingent of evangelical Christians who openly support same-sex marriage and LGBTQ+ rights [citing a *Politico* magazine article].

[Doc. 19 at 15 (emphasis added)]  Apparently, the Constitutional fact that Gordon College is not part of the "contingent" group Plaintiff references does not matter – she believes clearly she can use this lawsuit to change Gordon's contingent group to believe what her contingent group believes.  She means to have Gordon conform to her beliefs and not the other way around.  Given that Gordon established its "contingent group" of beliefs and believers a hundred years ago, it is astonishing that she seeks change Gordon's fundamental beliefs.  Not only does Plaintiff's lawsuit seek to violate Gordon's First Amendment rights, but also would condemn the College to a never-ending morass of litigation.  The Supreme Court has said it best: "The First Amendment protects [Gordon's] expression, be it of the popular variety or not."  *Boy Scouts of America v. Dale*, 530 U.S. 640, 660 (2000).

### 6.   The Dispositive Basis Presented in Defendants' Motion to Dismiss for Application of All First Amendment Protections Has Never Been Presented in this Case And is Ignored in Plaintiff's Motion.

Plaintiff does not even mention what is arguably the most significant argument against her lawsuit.  For far too long, courts and litigants have piecemeal applied one sliver or another of the First Amendment's religious protections.   It is axiomatic that different substantive First Amendment protections may be at play in one given set of facts.  This is that case.

Under the ministerial exception, a case is evaluated from the perspective of plaintiff's job and the religious beliefs of the religious educational institution.  Here, Plaintiff contends she was denied full professorship and later discharged because of her opposition and disagreement with the College's stated religious beliefs regarding homosexual practice and marriage.  The ministerial exception was developed as "a component" of the First Amendment to protect, "[a]mong other things," the right of churches and other religious institutions to decide matters of faith and doctrine without government intrusion.  *Our Lady*, 140 S. Ct. at 2060.  The recognized reality is that a college communicates its mission and religious beliefs through its faculty.  *Our Lady*, 140 S. Ct.

at 2055, 2064, 2066, 2069.

But the ministerial exception is not all the First Amendment protects.  It protects from the government taking actions which would "establish" a religion, as Plaintiff seeks here.  "[A]ny attempt by government to dictate or even to influence such matters would constitute one of the central attributes of an establishment of religion.  The First Amendment outlaws such intrusion.  *Our Lady*, 140 S. Ct. at 2060.   It also protects against government entanglement with religion, which will inevitably result in the instant action if the Court imposes Plaintiff's, the Courts, or some other new, revised statement of Gordon College's religious beliefs.  There is also the protection against government interference with a religious institution's "decision that affects the faith and mission" of the institution.  *Hosanna-Tabor*, 565 U.S. at 190.

The First Amendment also protects and provides rights to free association and free exercise of religion.  Both are clearly involved in this matter as Plaintiff seeks to prohibit Gordon College from freely associating with other religious conservatives of like religious beliefs.  Those beliefs of Gordon College were established long ago and continue to this day.  Gordon College and its adherents are free to associate and take action to promote and protect that right by holding its faculty, administration, and its Board of Trustees accountable and taking action if necessary with regard to persons who do not share those beliefs. *Little v. Wuerl*, 929 F.2d 944, 945-46 (3d Cir. 1991).  The free association aspects of the First Amendment have been referred to as the co-religionist doctrine.  *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327, 335-336 (1987); *see* also *id*. at 342-343 (Brennan, J. concurring).  *Boy Scouts v. Dale*, *supra*, is another example of this right and protection.  The Boys Scouts, like Gordon College, have certain religious beliefs and teachings about homosexual conduct. The Supreme Court noted in *Dale* that "[i]t is not the role of the courts to reject a group's expressed

values because they disagree with those values." *Id*. at 651.  "As we give deference to an association's assertion regarding the nature of its expression, we must also give deference to an association's view of what would impair its expression." *Id*. at 653. "And the fact that an idea may be embraced and advocated by increasing numbers of people is all the more reason to protect the First Amendment rights of those who wish to voice a different view." *Id*. at 660. "The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the groups ability to advocate public or private viewpoints. *Id*. at 648 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)) ("implicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of…religious…ends").  Like the Boy Scouts, Gordon College does not want to promote homosexual conduct as an appropriate behavior. *Dale*, 530 U.S. at 651.  This Court, like the Supreme Court in Dale, must accept the stated belief of the religious institution regarding homosexuality as a sincerely held religious belief entitled to First Amendment protection. *Id*.  Further, Dale instructs that courts are to give deference to a religious institution's "view" of what would impair its expression. *Id*. at 653.  The facts before the Court establish Gordon as a religious institution which has set forth express religious beliefs and has invited like-minded persons to join it as trustees, faculty, and students to pursue an integrated higher education of faith and learning.

This lawsuit attempts to use this Court, as part of our federal government's judicial system, to utilize federal and state employment law statutes (i.e., governmental) in a way which supplants Plaintiff's religious view of homosexuality for what she considered to be Defendants' "false" view. [Doc. 19 at 15]  She wants her supposedly enlightened  "contingent of evangelicals who openly support same-sex marriage and LGBTQ+ rights" to supplant Gordon's "inaccurate stereotypes

about evangelical Christianity." *Id*. Deny it as she may, that is the only reasonable inference from her FAC and the admissions in memoranda before this Court.  Moreover ,the Supreme Court has rejected the notion suggested by Plaintiff that because the College may permit some questioning of its beliefs that it somehow loses First Amendment protections:

> "The fact that an organization does not trumpet its views from the housetops, or that it tolerates dissent within its ranks, does not mean that its views are not entitled to First Amendment protection."

Id. at 656.

The allegations and relief requested in this lawsuit also implicate directly protections and rights identified by the U.S. Supreme Court in *Fulton v. City of Philadelphia*, ___ U.S. ___, 141 S. Ct. 1868 (2021).  At issue in *Fulton* was whether the non-discrimination provision City of Philadelphia's statute for the provision of foster care services could override the religious beliefs of Catholic Social Services with regard to marriage as a sacred bond between a man and a woman. *Fulton v. City of Philadelphia*, 141 S. Ct. at 1875.  CSS refused to certify same-sex married couples or unmarried couples as foster parents because to do so would be an endorsement of those relationships. *Id*. The City said that such position violated a non-discrimination provision in the contract with the City. *Id*. at 1876.  The Supreme Court noted that "religious beliefs need not be acceptable… or comprehensible to others in order to merit First Amendment protection." *Id*.  The Court held in *Fulton* that "[g]overnment fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id*. at 1877.

As to this argument, Defendants also reference and incorporate the argument and authorities presented in their Memorandum in Support of their Motion to Dismiss [Doc. 17 at 25-30].

### 7. **Counts I Through VI (Mass. ) Plaintiff's Employment Claims Under Massachusetts Statutes (Counts I Through VI) Are Barred By Exemption Under G.L. 151B.**

As discussed in more detailed in Defendants' Memorandum in Support of their Motion to Dismiss [Doc. 17 at 30-32], Plaintiff's claims under Massachusetts employment law statutes (Counts I-VI) are barred as a matter of law. Defendants incorporate and reference herein their prior arguments. Religious institutions are categorically excluded from the statute's definition of "employer." G.L. 151B, §1(5). This issue has not been asserted or adjudicated in this action.

**8. Plaintiff's Title VII Claims (Counts VII and VIII) Are Barred by Exceptions Under 42 U.S.C. §2000e-1 and 2000e-2.**

As discussed in more detail in Defendants' Memorandum in Support of their Motion to Dismiss [Doc. 17 at 32-34], Plaintiff's claims under federal employment law statutes (Counts VII and VIII) are barred as a matter of law. Again, Defendants reference and incorporate those arguments here. Like the Massachusetts's statutes referenced above, Title VII provides an exemption for religious institutions which is applicable here based on the FAC. This issue has not been asserted or adjudicated in this action. The affected claims should be dismissed.

**9. Plaintiff's MCRA Claim and Contract Claim (Counts IX through XI) Are Barred As a Matter of Law Based on the Exclusivity Provision of G.L. §151B, §9.**

Defendants' Memorandum in Support of their Motion to Dismiss [Doc. 17 at 35-37] provides a detailed analysis of this argument which is referenced and incorporated herein. G.L. 151B, §9 provides that 151B is the exclusive remedy for employment discrimination. Based on the allegations in the FAC, Plaintiff's MCRA and contract claims should be dismissed as a matter of law. This issue has not been asserted or adjudicated in this action. The affected claims should be dismissed.

**10. Plaintiff's Statutory Employment Claims Under Massachusetts Law, G.L. 151B, and Under Federal Title VII Are Barred Based on the Bona Fide Occupational Qualification Exemptions of Those Statutes.**

Plaintiff's claims under Massachusetts statute G.L. 151B (Counts I Through VI) and Title VII (Counts VII and VIII) are precluded as a matter of law because agreeing to and abiding by the

College's stated religious beliefs and employment requirements related to Plaintiff's job qualification and the mission of Gordon College are bona fide occupational qualifications ("BFOQ").  Discussion of the application of the BFOQ exemption to the specific facts before the court is addressed in Defendant's Memorandum in Support of their Motion to Dismiss [Doc. 17 at 39-40 (Massachusetts) and 37-39 (Title VII)] and is incorporated herein by reference.  These issues have not been asserted or adjudicated in this action.  The affected claims should be dismissed on these separate and independent grounds as a matter of law based on the facts before the Court.

Respectfully submitted,

GORDON COLLEGE, D. MICHAEL LINDSAY, JANEL CURRY, HERMAN SMITH, and MYRON ULLMAN III

By their attorneys,

/s/ Ashley B. Abel
Ashley B. Abel (admitted pro hac vice)
Ashley.Abel@jacksonlewis.com
Jackson Lewis P.C.
15 South Main Street
Suite 700
Greenville, SC 29601
(864) 672-8036

Benjamin R. Davis (BBO #673017)
benjamin.davis@jacksonlewis.com
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA  02116
(617) 367-0025

Dated: April 15, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of April 2022, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

<u>*s/Ashley B. Abel*</u>
Jackson Lewis, P.C.